Robert BECKER, et al., Appellants,

v.

FIRST AMERICAN STATE BANK OF REDWOOD FALLS, Respondent.

No. C1–87–1875.

Court of Appeals of Minnesota.

March 1, 1988.

J. Brian O'Leary, O'Leary & Moritz Chartered, Springfield, for appellants.

Paul H. Anderson, LeVander, Gillen, Miller, Anderson and Kuntz, South St. Paul, for respondent.

Considered and decided by NORTON, P.J., and KALITOWSKI and SCHULTZ *, JJ., with oral argument waived.

## OPINION

HAROLD W. SCHULTZ, Judge.

This appeal is from a summary judgment dismissing an action based on an alleged oral credit agreement. The trial court determined the action was barred by Minn. Stat. § 513.33 (1986), which provides a credit agreement must be in writing to be actionable. Appellants claim (1) the statute does not apply to their particular action, (2) the writing requirement is eliminated under the doctrine of part performance, and (3) a fact issue regarding the existence of the oral agreement precludes summary judgment. We affirm.

## FACTS

Appellants Robert and Marlyce Becker own a business selling fuel products on a wholesale and retail basis. In 1971, appellants began their banking relationship with respondent First American State Bank of Redwood Falls.

In August 1982, appellants alleged that respondent, through its president L.K. Iverson, orally agreed that if appellants would reduce their indebtedness, respondent would continue financing appellants. There is no dispute the alleged agreement was not in writing. Appellants claimed that in reliance on the oral agreement, they immediately sold several parcels of their property at substantially less than market value.

Appellant Robert Becker testified in his deposition that in 1983, respondent honored appellants' overdrafts in excess of $150,000. He further testified that he later signed an unsecured note with respondent for $145,000 to take appellants off their overdrawn account.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

In the fall of 1984, appellants requested an additional loan but respondent refused their request. Appellants eventually obtained a loan from another bank in the spring of 1985.

In January 1987, appellants commenced this action against respondent seeking damages from their "quick sale" of property. Appellants claimed the damages arose under the alleged 1982 oral agreement which they claimed respondent breached by refusing to lend additional funds in 1984. Respondent then brought motions to dismiss for failure to state a claim upon which relief can be granted and summary judgment.

The trial court granted respondent summary judgment by determining, as a matter of law, appellants' action is barred by Minn.Stat. § 513.33, subd. 2 (1986), which provides a credit agreement must be in writing to be actionable. The court also addressed appellants' argument that a fact issue regarding the existence of the oral agreement precluded summary judgment. The court stated:

> In considering the state of the record in a light most favorable to [appellants], the Court feels there is no fact question to be presented to the jury for its determination as if what [appellant] Becker says is true, continued financing by [respondent] did exist by way of carrying [appellants'] overdrafts until reduced to a promissory note.

## ISSUE

Did the trial court err in granting respondent summary judgment?

## ANALYSIS

On appeal from a summary judgment, it is the function of a reviewing court to determine whether there are any genuine issues of material fact and whether respondent is entitled to summary judgment as a matter of law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979).

Minn.Stat. § 513.33 (1986) governs credit agreements and provides:

Subdivision 1. Definitions. For the purposes of this section, the following terms have the meanings given them:

(1) *"credit agreement" means an agreement to lend* or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation;

\*      \*      \*      \*      \*      \*

Subd. 2. *Credit agreements to be in writing.* A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Subd. 3. Actions *not* considered agreements. (a) The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subdivision 2;

(1) the *rendering of financial advice* by a creditor to a debtor;

(2) the consultation by a creditor with a debtor; or

(3) the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements.

(b) A credit agreement may not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.

*Id.* (emphasis added)

In this case, the alleged oral agreement to continue lending appellants funds fits squarely within the statute's definition of "credit agreement." Minn.Stat. § 513.33, subd. 1(1). Appellants argue the statute does not apply to their action because they are not now seeking credit but damages from the "quick sale." Appellants alleged, however, those damages arose from the oral agreement and therefore they did seek to maintain "an action on the credit agreement," which the statute precludes without a writing. Minn.Stat. § 513.33, subd. 2.

In applying the statute, the trial court found respondent's recommendation that appellants reduce their indebtedness constituted "a rendering of financial advice."

Minn.Stat. § 513.33, subd. 3(a)(1). The court explained:

> [I]n reviewing the depositions of Mr. Iverson and [appellant], it appears Mr. Iverson was, at the very least, rendering financial advice in recommending to [appellant] he reduce his indebtedness by selling off properties in order that his existing cash flow would then support not only his current operation but place his then existing debts in a manageable position.
>
> *  *  *  *  *  *
>
> [Section] 513.33 specifically provides that rendering of financial advice by a creditor to a debtor does not give rise to a claim that a new credit agreement is created unless such agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and debtor. It appears that 513.33 was enacted for the specific purpose of situations as is now before the Court, which is in a sense analogous to the current farm financing problems which prompted its enactment.

We agree with the trial court. Appellants' action fails as a matter of law because the alleged agreement did not comply with the writing requirements under Minn.Stat. § 513.33. Appellants' argument that the writing requirement is eliminated under the equitable doctrine of part performance is inappropriate because that doctrine does not apply to actions at law for money damages. *In re Estate of Hallock*, 221 Minn. 30, 32, 20 N.W.2d 884, 885 (1945); *see also Bouten v. Richard Miller Homes, Inc.*, 321 N.W.2d 895, 899–900 (Minn.1982) (affirming the rule in *Hallock*).

We also agree with the trial court that no genuine issues of material fact existed to preclude summary judgment.

### DECISION

The trial court did not err in granting respondent summary judgment.

Affirmed.