**Joseph F. BARTL, et al., Respondents,**

v.

**Keith M. KENYON, Appellant.**

**No. C2–95–2207.**

Court of Appeals of Minnesota.

June 11, 1996.

Kent D. Mattson, Pemberton, Sorlie, Sefkow, Rufer & Kershner, P.L.L.P., Fergus Falls, for Respondents.

Thomas C. Athens, Svingen, Athens & Russell, Fergus Falls, for Appellant.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

DAVIES, Judge.

Landowner Keith M. Kenyon appeals the trial court's judgment declaring valid a perpetually renewable hunting-rights lease held by respondents Joseph F. Bartl, Paul Bartl, Mark Bartl, James Deering, James Jaworski, David Kluender, and Timothy Kluender. Kenyon argues that (1) there was no consideration for the perpetual option to renew, (2) the terms of the lease are unconscionable, (3) his predecessor-in-interest, who executed the lease, lacked capacity to do so; and (4) it violates Minn. Const. art. 1, § 15. We reverse.

## FACTS

Charles and Hazel Knutson owned land bordering Mud Lake in Otter Tail County. The land included two quality waterfowl hunting areas. One of the areas was known as the East Pass or "Kid's" Pass and the other was the Roger Dell Pass.

Sometime before 1971, the Knutsons leased out the hunting rights to these two areas for $300 each per season. The Roger Dell Pass was leased to Chester Rosengren, an attorney and district court judge, and the East Pass was leased, by oral agreement, to respondents (or their predecessors). In 1971, the agreement was reduced to writing. The form of the "lease"[1] was essentially the same as that used by Judge Rosengren to lease the Roger Dell Pass.

Under this lease, respondents paid $300 annually for the exclusive waterfowl and upland game hunting rights. The lease provided that the annual payment was to be made on or before September 1. Absent waiver of payment, the lease became null and void if payment was missed. The written lease was identified as "perpetual" and ran with the land and inured to the heirs, executors, administrators, and assigns of the parties.

Respondents made the $300 payment on the East Pass each year through 1992. Following the deaths of Charles and Hazel Knutson, the property passed through their family and eventually to their grandson, Gerald Knutson. On May 25, 1993, Kenyon purchased the East Pass property from Gerald Knutson. When he purchased it, Kenyon was aware that the property was subject to the lease. On August 27, 1993, David Kluender, on behalf of respondents, tendered the $300 payment for the East Pass to Gerald Knutson. Gerald Knutson informed Kluender that he no longer owned the East Pass and directed him to contact Kenyon about payment. Kluender tendered payment to Kenyon on September 23, 1993, but Kenyon refused to accept it, telling Kluender that "the lease is no longer in effect" because of late payment. Kluender again tendered payment, but Kenyon again refused to accept it.

In September 1994, respondents commenced a declaratory judgment action seeking to have the agreement declared valid and enforceable. Following a court trial, the court concluded that the perpetual lease agreement was valid and that Kenyon was subject to its terms.

## ISSUE

Is the provision in the agreement granting a perpetual annual renewal option void for lack of consideration?

## ANALYSIS

■ Although the lease agreement does not explicitly state that it grants an option to renew annually, its provisions essentially accomplish that result, and we concur with the trial court that, in appearance, the provisions give the "lessee the option to renew the lease in perpetuity * * *." Kenyon argues, however, and we agree, that the trial court erred in its conclusion that there was consideration for the perpetual annual option provided in the 1971 written lease. According to Ken-

[1.] There is some dispute over whether the agreement is a "lease" or an "easement." We do not believe its characterization affects our decision. Therefore, we follow the trial court in referring to it as a lease, which is the way the document itself is titled.

yon, there is no evidence that the pre–1971 oral agreement between the Knutsons and respondents included the perpetual renewal option, so when it was reduced to writing in 1971 and the annual payment remained at $300, there was no additional consideration given to obtain the perpetual annual option. Therefore, only a new promise—supported by consideration—would bind Kenyon. (There is no suggestion of gift.)

Only a promise supported by consideration constitutes a contract. *Baehr v. Penn–O–Tex Oil,* 258 Minn. 533, 538–39, 104 N.W.2d 661, 665 (1960). "Whether * * * consideration is present or embraced in the agreement is a question of law * * *." 17A C.J.S. *Contracts* § 613 (1963). Where no consideration is apparent on the face of the agreement, the party relying on it must prove consideration. *Dabbs v. International Minerals & Chem. Corp.,* 339 F.Supp. 654, 664 (N.D.Miss.1972), *aff'd,* 474 F.2d 1344 (5th Cir.1973); *see also Moorcroft State Bank v. Morel,* 701 P.2d 1159, 1161 (Wyo.1985) (burden of proving consideration is on party seeking to recover on contract). The consideration originally given for a lease cannot serve as consideration for an option to renew that is subsequently added to the lease. *William Weisman Realty Co. v. Cohen,* 157 Minn. 161, 164–65, 195 N.W. 898, 899 (1923). There is no evidence that the Knutsons received any new consideration for the perpetual renewal option.

The trial court stated:

The fact that they make regular annual payments satisfies the Court that consideration is paid and that the consideration is adequate.

We are not concerned, however, with the consideration that is required to *exercise* the option. Instead, the issue is whether there was any consideration paid to make the option perpetual. The lease agreement states only that consideration was paid for hunting rights in the past and that the respondents may continue to pay $300 annually for the hunting rights in the future. The agreement does not on its face provide that consideration was paid for the perpetual option, and respondents have not produced any supporting evidence for such consideration. Nor have respondents produced sufficient evidence that an enforceable annual option was part of the agreement prior to that time. They, therefore, have not carried their burden of proof for the argument that no consideration was needed. Without independent consideration, the option is not valid.

## DECISION

The perpetual renewal option in the lease is not supported by consideration and is unenforceable. Because of our decision on this issue, we decline to address Kenyon's other arguments.

**Reversed.**